UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| REBECCA D. BALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:22-cv-00161-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Kilolo Kijakazi*, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Rebecca D. Ball appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). Ball filed her opening brief on October 7, 2022 (ECF 17), and the Commissioner timely responded on January 17, 2023 (ECF 19 to ECF 23). Ball failed to file a reply brief, and her time to do so has now passed. (*See* ECF 22). Therefore, the appeal is ripe for ruling.

For the following reasons, the Commissioner's decision will be AFFIRMED.

**I. FACTUAL AND PROCEDURAL HISTORY**

Ball applied for DIB in December 2019, alleging disability as of October 24, 2018. (ECF 12 Administrative Record ("AR") 19, 223-26).[1] She was last insured for DIB on March 31, 2019, and thus, she must establish that she was disabled by that date. (AR 20, 281); *see Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that she

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

was disabled by her date last insured in order to recover DIB). Ball's claim was denied initially and upon reconsideration. (AR 19, 117-35). On February 2, 2021, administrative law judge ("ALJ") Terry L. Miller conducted an administrative hearing (AR 37-84), and on March 17, 2021, rendered an unfavorable decision to Ball, concluding that she was not disabled through her date last insured because, despite the limitations caused by her impairments, she could perform a significant number of jobs in the national economy (AR 19-32). The Appeals Council denied Ball's request for review (AR 5-10), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Ball filed a complaint with this Court on May 12, 2022, seeking relief from the Commissioner's decision. (ECF 1). Ball advances just one argument on appeal: that the ALJ failed to consider the impact of her irritable bowel syndrome (IBS) and urinary frequency when assigning the residual functional capacity ("RFC"). (ECF 17 at 11-14).

On the date of the ALJ's decision, Ball was fifty-one years old (AR 223); had obtained a GED (AR 252); and had past work experience as a commercial cleaner, housekeeper/laundry aid/recreation aide (composite job), and paint dipper/packager (composite job). (AR 78; *see* AR 252, 264). In her application, Ball alleged disability due to anxiety, depression, chronic obstructive pulmonary disease (COPD), bladder problems, IBS, bowel problems, knee problems, carpal tunnel syndrome, arthritis and neuropathy in her feet, migraines, tendonitis, reduced kidney function, diabetes, and "possible gall bladder." (AR 251).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

2

The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[2] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

### B. The Commissioner's Final Decision

In the final decision of the Commissioner, the ALJ observed at the outset that Ball last met the insured status requirements for DIB on March 31, 2019. (AR 21). At step one of the five-step analysis, the ALJ found that Ball had not engaged in substantial gainful activity since her alleged onset date of October 24, 2018, through her date last insured of March 31, 2019. (AR 22). At step two, the ALJ found that Ball had the following severe impairments through her date last insured: history of hidradenitis suppurativa; history of COPD with a smoking history; history of vision difficulties, status post cataract surgery; morbid obesity, hyperlipidemia, and

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(a)(4), 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 404.1520(e).

hypertension; and history of recurrent depression of a moderate severity. (*Id.* (citations omitted)). The ALJ found that her prediabetes, two benign right breast masses, and right hip pain, however, were non-severe impairments. (*Id.*).

At step three, the ALJ concluded that Ball did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 23). The ALJ then assigned Ball the following RFC:

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except for these additional work-related limitations: only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, scaffolds; she needs to avoid concentrated exposure to extreme heat, humidity, and pulmonary irritants, including fumes, odors, dust, gases, poorly ventilated areas and chemicals; she must work in an indoor temperature controlled environment; and no exposure to hazards, including operational control of dangerous moving machinery, unprotected heights, slippery/uneven/moving surfaces. Mentally, the claimant is limited to understanding, carrying out and remembering simple instructions consistent with unskilled work (defined as occupations that can be fully learned within a short period of time of no more than 30 days, and requires little or no judgment to perform simple tasks), with the ability to sustain those tasks throughout the eight-hour workday without frequent redirection to task; should not work in an environment that is stringently production or quota based, and thus may not perform fast-paced assembly-line type of work, but can meet production requirements that allow her to sustain a flexible and goal oriented pace; the ability to use judgment in making work-related decisions is limited to making only simple work-related decisions; only occasional changes in a routine work setting; only superficial interactions with supervisors and coworkers, defined as occasional and casual contact with no prolonged conversations and contact with supervisors is short but allows the supervisors to give instructions; no work with the general public; and work which would only require at most occasional simple reading at a 12 size font.

(AR 24-25).

The ALJ determined at step four that given the foregoing RFC, Ball could not perform any of her past relevant work through her date last insured. (AR 31). At step five, however, the ALJ found that Ball could perform a significant number of unskilled, light-exertional jobs in the

5

economy through her date last insured, including bench assembler, motel housekeeper, and routing clerk. (AR 32). Therefore, Ball's application for DIB was denied. (*Id.*).

## C. IBS and Urinary Frequency

Ball's sole argument on appeal is that the ALJ erred by ignoring medical evidence of her IBS and urinary frequency, and by failing to account for these conditions in the RFC. (ECF 17 at 11-14). Ball's argument is ultimately unavailing.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (bold emphasis omitted). That is, the "RFC does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* (footnote omitted); *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3).

When determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). "The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (citations omitted); *see also John B. v. Saul*, No. 2:18-cv-00223-JVB-

JEM, 2019 WL 4233744, at *2 (N.D. Ind. Sept. 5, 2019).

Contrary to Ball's assertion, the ALJ did not ignore evidence of record pertaining to her IBS and frequent urination. Rather, the ALJ reasonably considered Ball's report of urinary and bowel frequency, urgency, and incontinence. In that regard, the ALJ extensively questioned Ball about these symptoms during the hearing, specifically inquiring about how often she uses the restroom during a typical day, whether she has accidents or wears pads, any pain she experiences due to IBS, whether she is on a special diet, and whether she takes medication for IBS. (AR 58-59). Ball responded that she "go[es] [to the restroom] a lot" and if she is "stressed out," then she "ha[s] to go to the bathroom about every half hour." (AR 58). She stated that she has accidents two or three times a week and has worn pads, sometimes has stomach pain and vomits, and takes a medication for IBS. (AR 59, 74). She further testified that she has been dealing with urinary frequency for about ten years and IBS for about fifteen years. (AR 73-74).[3]

Further, the ALJ directly addressed Ball's symptom testimony about IBS and frequent urination in his decision. The ALJ expressly acknowledged that Ball "reported urinary frequency" and "frequent restroom visits every thirty minutes due to irritable bowel syndrome" (AR 27), testified that she "has experienced urinary frequency for about 10 years" and "irritable bowel syndrome for 15 years," and claimed that she "did not make it to the restroom about two or three times a week" (AR 28). The ALJ, however, discounted Ball's symptom testimony, explaining that "[w]hile the claimant testified to issues with urinary frequency [and] irritable bowel syndrome . . . , the treatment record does not reflect ongoing treatment or complaints for . . . these conditions during the relevant period such as to corroborate her testimony." (AR 30; *see*

---

[3] Ball's testimony earlier in the hearing revealed that she had worked during a significant portion of this fifteen-year period, that is, up to 2015. (AR 43, 47-51).

7

*also* AR 28 ("[H]er testimony is not entirely consistent with the evidence of record in terms of her alleged physical symptoms and functional deficits.")).

Indeed, the medical evidence in support of Ball's argument is scant. She cites just one treatment note from December 2018 in which a nurse practitioner diagnosed her with "possible IBS" and prescribed Dicyclomine. (ECF 17 at 12; *see* AR 345-59). At that visit, Ball told the nurse that she was "concerned she has IBS" because "[f]or 15 years, she has [had] stomach cramping and diarrhea with eating." (AR 345). Ball continued on Dicyclomine at the same dosage through at least November 2020 (AR 492), but she does not point to any medical record or provider assigning her restrictions due to IBS. *See McGillem v. Kijakazi*, No. 20-2912, 2022 WL 385175, at *3 (7th Cir. Feb. 8, 2022) (affirming the ALJ's decision where the ALJ acknowledged that there was objective evidence of the claimant's fecal incontinence but the record showed that it could be controlled with treatment). "[T]he need for restrictions cannot be inferred from the diagnosis alone[,]" *id.* at *4, let alone a "possible IBS" diagnosis (AR 351).

Ball also fails to support her claim of urinary frequency with medical evidence. She does not direct the Court's attention to any evidence of record demonstrating that she ever complained of frequent urination to her medical providers, and it is not the Court's duty to scour the record in search of evidence to support a claimant's arguments. *See generally Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record." (citation and brackets omitted)). In fact, Ball often denied frequent urination or incontinence to her providers. (*See, e.g.*, AR 304, 308, 321, 344-50, 430, 435, 440, 445-48, 451-53, 457, 459, 494-501). "The ALJ may consider inconsistencies between the severity of symptoms reported at the hearing and those reported while seeking treatment, the failure to regularly seek treatment for those symptoms, and/or the pursuit of 'routine and conservative'

8

treatment." *John H. v. Saul*, No. 1:18-cv-02586-TWP-MPB, 2019 WL 6909582, at *5 (S.D. Ind. Dec. 18, 2019) (quoting *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005)).

Rather than cite medical evidence, Ball points out that she was prescribed a diuretic that has a known side effect of frequent urination and diarrhea. (ECF 17 at 12 (citation omitted)). But Ball does not cite to any medical evidence of record documenting her alleged frequent urination, and thus, her "assertion that she must be suffering from a side effect of her medication is nothing more than mere speculation." *Carolyn L. M. v. Kijakazi*, No. 1:21-cv-229, 2022 WL 2438042, at *3 (N.D. Ind. July 5, 2022) (rejecting the claimant's argument that the ALJ erred by failing to assign her limitations for frequent urination as a side effect of medication where "the only mention of frequent urination in the medical record is her brief testimony regarding it").

As this Court has often emphasized, "the primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). Ball has failed to carry her burden of citing medical evidence and medical source opinions to support her contention that she needs restroom breaks every thirty minutes due to IBS or urinary frequency. "The ALJ needed only to include limitations in his RFC determination that were supported by the medical evidence and that the ALJ found to be credible." *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) (citations omitted). Here, the ALJ made it quite clear that he found Ball's allegations of severe limitations from IBS and frequent urination to lack credibility and support in the medical record. (AR 30).

Furthermore, the ALJ's conclusion not to include any restrictions for IBS or frequent urination in the RFC is supported by the opinions of the two state agency physicians, J. Sands, M.D., and B. Whitley, M.D. (*See* AR 30, 118, 120-23, 127, 131-33). These doctors reviewed Ball's medical records and her complaints of IBS and frequent urination, and found that she could still perform a limited range of medium-exertional work, that is, the ability to lift twenty-five pounds frequently and fifty pounds occasionally, walk or stand at least six hours in an eight-hour workday, and sit at least six hours in an eight-hour workday. (*Id.*); *see Kenneth T. v. Comm'r of Soc. Sec.*, No. 17-cv-428-CJP, 2018 WL 3127070, at *3 (S.D. Ill. June 26, 2018) (acknowledging that medium exertional work requires the ability to lift or carry 50 pounds occasionally and 25 pounds frequently, stand or walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday); 20 U.S.C. § 404.1567(c); *see generally Walls v. Kijakazi*, No. 2:21-cv-68-JPK, 2022 WL 4377379, at *12 (N.D. Ind. Sept. 22, 2022) ("[The state agency consulting examiner] has disability program knowledge, and therefore it must be presumed he is aware that activities . . . are undertaken on a regular and continuing basis for 8 hours a day, 5 days a week." (quotation marks and brackets omitted)); *Jordan v. Astrue*, No. 1:08-cv-497-WTL-DML, 2009 WL 3053715, at *12 (S.D. Ind. Sept. 18, 2009) ("[The non-examining physician's] opinion that [the claimant] could work at the sedentary level implicitly included a determination that she could work eight hours a day, five days a week.").

In sum, contrary to Ball's assertions, the ALJ adequately considered Ball's symptom testimony pertaining to her IBS and urinary frequency, fairly reviewed the medical evidence (or the lack thereof) pertaining to these complaints, and adequately articulated his reasoning for discounting the severity of her allegations about her IBS symptoms and urinary frequency. No more is required of the ALJ. The Commissioner's final decision is supported by substantial

evidence and will be AFFIRMED.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Ball.

SO ORDERED.

Entered this 14th day of June 2023.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge